**E-FILED**
Thursday, 05 March, 2015  12:57:05 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| CINCINNATI INSURANCE COMPANY, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No.  14-CV-1319<br>) |
| SOCIETY INSURANCE, a mutual company, and HABANERO GRILL CANTINA, INC. | )<br>)<br>)<br>) |
| Defendants. | ) |

**O R D E R  &  O P I N I O N**

This matter is before the Court on Defendant Society Insurance's Motion for Summary Judgment (Doc. 19) and Motion to Dismiss Habanero Grill Cantina's Crossclaim (Doc. 31). Both motions are fully briefed and ready for decision. For the reasons explained below, both motions are granted.

**PROCEDURAL HISTORY**

On August 12, 2014, Plaintiff Cincinnati Insurance Company ("Cincinnati") filed the present case against Defendants Society Insurance ("Society") and Habanero Grill Cantina, Inc. ("Habanero") after a fire originating in Habanero's building damaged the building of Cincinnati's insured, Heath Farrell d/b/a Total Aquarium Needs Keeping Services ("Tanks"). Plaintiff brings five claims: declaratory judgment against Society (Count I); subrogation against Society (Count II); subrogation against Habanero (Count III); private nuisance against Habanero (Count IV); and constructive trust against Habanero. (Count IV).

1

Rather than filing an Answer or a Rule 12 motion, Society filed a motion for summary judgment on November 3, 2014. (Doc. 19). Cincinnati filed a motion pursuant to Rule 56(d) on November 21, 2014, in which it requested that the Court either deny Society's motion for summary judgment or defer its consideration of it pending discovery. (Doc. 20). The Court denied Cincinnati's motion on December 12, 2014, and directed it to respond to Society's motion for summary judgment. (Doc. 26). Cincinnati responded to Society's motion for summary judgment on December 30, 2014 (Doc. 30), and Society filed its reply on January 13, 2015. (Doc. 33).

After receiving a number of extensions to file its Answer, Habanero filed an answer together with affirmative defenses and crossclaims against Society on December 22, 2014. (Doc. 27). Society filed a motion to dismiss the crossclaims on January 12, 2015 (Doc. 31), to which Cincinnati responded on January 29, 2015 (Doc. 36) and Habanero responded on February 12. (Doc. 37).

## FACTUAL BACKGROUND[1]

Before March 6, 2013, Habanero operated a restaurant at 630 Main Street in Princeton, Illinois. Next door, at 628 Main Street, Tanks operated a pet store. The two buildings are alleged to share a common party wall.

Each business carried separate insurance. Cincinnati insured Tanks under policy number EBP 006 78 69, while Society insured Habanero under policy number

---

[1] Unless otherwise indicated, these background facts reflect the Court's determination of the undisputed facts, and are drawn from Society and Cincinnati's statements of facts and responses thereto. (Docs. 19, 30, 33). Facts relevant to Society's Motion to Dismiss Habanero's crossclaims are not discussed in this section, but are rather discussed *infra* at 9-10.

2

ROP 552823. Tanks is not insured under Society's policy with Habanero, and Habanero is not insured under Cincinnati's policy with Tanks.

Cincinnati alleges in its Complaint that it paid $259,867.50 in order to repair or replace the common party wall, which was damaged by the fire that originated in Habanero's building. (*See* Doc. 1 at ¶¶ 18-20).

Under the terms of Cincinnati's policy with Tanks, Tanks' rights to recover damages are transferred to Cincinnati. (*Id.* at ¶¶ 25-26). On or before September 26, 2013, Cincinnati notified Habanero and Society of its request that Habanero share in the cost of repairing the common party wall. After the fire, Habanero elected not to repair or replace the Habanero building. Both Habanero and Society have refused to reimburse Cincinnati for the costs that it incurred when it repaired or replaced the common party wall.

### SUMMARY JUDGMENT STANDARD

Summary judgment shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant. *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011).

To survive summary judgment, the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Technical Grp.*, 258 F.3d 557, 563 (7th Cir.

3

2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *See McClendon v. Ind. Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## DISCUSSION

### I. Society's Motion for Summary Judgment

Cincinnati's five-count Complaint includes two counts against Society. The first is for a declaratory judgment that the common party wall is covered by Society's policy and that Society is required to pay one-half the cost to repair or rebuild the common party wall. (Doc. 1 at ¶ 31). The second is a claim for subrogation, in which Cincinnati alleges that it extinguished Society's liability to pay for the cost of repairing or replacing the common party wall, and seeks reimbursement for one-half the cost. (*Id.* at ¶¶ 32-39). Society has moved for summary judgment on both counts. It argues that it does not owe any obligation to Cincinnati or Cincinnati's insured, Tanks, because, among other things, Tanks is not one of its insureds.[2]

---

[2] Society also argues that it has executed a valid Policyholder's Release with Habanero that frees it of any additional liability resulting from the fire on March 6, 2013 under its policy with Habanero. (*See* Doc. 19 at 7-8; Doc. 33 at 5-6). The same Policyholder's Release is implicated in one of Habanero's crossclaims against Society. (*See* Doc. 27 at ¶¶ 71-79). As explained below, the Court determines that Cincinnati's claims against Society fail for other reasons, and it therefore does not need to reach the validity or scope of the Policyholder's Release at this point.

4

### a. Cincinnati's Declaratory Judgment

Cincinnati argues in its response to Society's Motion for Summary Judgment that it is basing its request for a declaratory judgment on a theory of contribution. (*See* Doc. 30 at 8). Contribution "is an equitable principle arising among coinsurers which permits one insurer who has paid the entire loss, or greater than its share of the loss, to be reimbursed from other insurers who are also liable for the same loss." *Home Ins. Co. v. Cincinnati Ins. Co.*, 821 N.E.2d 269, 276 (Ill. 2004). Contribution is "only available where the concurrent policies insure the same entities, the same interests, and the same risks." *Id.*

It is undisputed that Tanks is not insured under the relevant Society policy and that Habanero is not insured under the relevant Cincinnati policy. (*See* Doc. 30 at 4). Therefore, Cincinnati has admitted that the concurrent policies do not insure the same entities, and has failed to meet the first prerequisite necessary to state a contribution claim. *See Home Ins. Co.*, 821 N.E.2d at 276.

Cincinnati glosses over this essential element to a contribution claim, and asserts that it is entitled to contribution because both its policy and Society's policy protect the entire common party wall. (*See* Doc. 30 at 9 (citing *Citizens' Fire Ins. Co. v. Lockridge*, 116 S.W. 303 (Ky. App. 1909) and *Nelson v. Continental Ins. Co.*, 182 F. 783 (6th Cir. 1910) for the proposition that an insured has a fee interest in one part of a common party wall and an easement interest in the remaining part of the common party wall)). As Cincinnati cannot establish the first prerequisite for a contribution claim, its claim fails. The Court need not address the parties' other

5

arguments as to whether Cincinnati and Society insure the same interests or the same risks.

### b. Cincinnati's Subrogation Claim

Cincinnati's claim against Society for subrogation must fail for similar reasons. Subrogation is "designed to place the ultimate responsibility for a loss upon the one on whom in good conscience it ought to fall and to reimburse the innocent party who is compelled to pay." *Reich v. Tharp*, 521 N.E.2d 530, 533 (1987). "It is axiomatic that for a right of subrogation to exist, the subrogor must possess a right that he could enforce against a third party and that the subrogee must seek to enforce the subrogor's right." *Id*. Courts analogize this to a subrogree "stepping into the shoes" of a subrogor. *See Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 936 (7th Cir. 2003). In such a case, the insurer "acquires no greater or lesser rights than those of the insured." *Id*.

In the insurance context, a subrogation claim has three elements. *See Home Ins. Co.*, 821 N.E.2d at 280. First, the defendant insurer "must be primarily liable to the insured for a loss under a policy of insurance." *Id*. Second, "the plaintiff carrier must be secondarily liable to the insured for the *same loss* under its policy." *Id*. Third, "the plaintiff carrier must have discharged its liability to the insured and at the same time extinguished the liability of the defendant carrier." *Id*.

In this case, Cincinnati seeks damages from Society as Tanks' subrogee. (*See* Doc. 1 at ¶¶ 24-26; Doc. 30 at 10). Therefore, in order for Cincinnati to succeed in its subrogation claim, it must establish that Tanks had a right that it could enforce against Society. *See Reich*, 521 N.E.2d at 533.

Unfortunately for Cincinnati, Tanks does not have a right under Society's policy with Habanero. In Illinois, "[p]roperty insurance does not insure property but the interest of the insured named in the policy." *Goldstein v. Scott*, 439 N.E.2d 1039, 1042 (Ill. App. Ct. 1982). Therefore, as a rule, entities that are not insured by a particular policy do not have a right to recover on the policy, even when they suffer a property loss in which they have an interest." *Id.*; *see also Redfield v. Cont'l Cas. Corp.*, 818 F.2d 596, 606 (7th Cir. 1987); *Complaint of Midwest Equip. Leasing Corp.*, 703 F. Supp. 727, 730 (N.D. Ill. 1988).

As explained above, Cincinnati admits that Tanks is not insured under the relevant Society policy. (*See* Doc. 30 at 4). For that reason, Tanks does not have a right to recover under Society's policy, *see Goldstein*, 439 N.E.2d at 1042, and Cincinnati therefore does not have a right to subrogation. *See Reich*, 521 N.E.2d at 533.

Cincinnati misconstrues Society's argument as an argument that "Cincinnati has no subrogation right because Society and Cincinnati did not insure the same interests," and goes on to suggest that Society and Cincinnati did insure the same interest: the common party wall. (Doc. 30 at 10-11). Although Society has argued that Habanero and Tanks each had different insurable interests in the common party wall, Society concluded that "the carriers were not liable to the *same insured* for the *same loss*." (Doc. 19 at 6-7) (emphasis added). As explained above, a claim of subrogation requires that the defendant carrier and plaintiff carrier be liable to the same insured. *See Home Ins. Co.*, 821 N.E. 2d at 280. Therefore, even if Cincinnati and Society were liable for the loss of the common party wall under their respective

7

policies, and even if Cincinnati discharged Society's liability when it paid to repair the common party wall, the fact of the matter is that Cincinnati and Society would be liable to separate insureds. *See id.* In such a case, a subrogation claim is not viable. *See id.*

Cincinnati suggests that these rules ought not to apply in this case because none of these cases involve common party walls and are therefore "not controlling on the unique issues presented by the common party wall in this case." (Doc. 30 at 11). Cincinnati is asking the Court to disregard the elements of equitable subrogation which have been cited with approval by the Illinois Supreme Court, *see Home Insurance Co.*, 821 N.E.2d at 280, because of a unique factual situation for which it could not locate applicable Illinois authority. (*See* Doc. 30 at 9).

The Court is not persuaded by Cincinnati's appeal, which relies upon two non-controlling cases from other jurisdictions that were decided over a century ago. In fact, each of the cases upon which Cincinnati relies to support its theory of liability is inapposite. One even suggests that the traditional rule ought to apply in exactly this sort of context. Both cases establish that an insured has an insurable interest in an entire common party wall, and establish that its insurer may be liable for replacing the wall even when the adjoining property has caused damage to the wall. *See Citizens Fire Ins. Co.* 116 S.W. at 304; *Nelson*, 182 F. at 786-87. However, in both cases, the adjoining property owner and the adjoining property owner's insurer were not parties. *See Citizens Fire Ins. Co.* 116 S.W. at 304; *Nelson*, 182 F. at 786-87. Therefore, the holdings of these cases do not address the contribution and subrogation issues presented here.

Although these cases do not address the issues presented here, the *Citizens Fire Insurance Co.* court assumed that the traditional rule would apply in exactly this sort of context. In dicta, it suggested that the adjoining property owner and its insurer only had limited responsibilities to the defendant insurer and the plaintiff insured. *See Citizens Fire Ins. Co.*, 116 S.W. at 304. The court wrote, "even if [the adjoining property owner] had insurance upon her building, which was paid to her," the owner could not be compelled to contribute toward rebuilding or repairing the party wall, unless, perhaps, she "subsequently elect[ed] to rebuild her house so as to tie onto or build into the party wall . . ." *Id.* In conclusion, these cases, which do concern the so-called unique issues presented by a common party wall, suggest no reason to deviate from established principles of law. The Court has applied the established elements for a subrogation claim to the undisputed facts of this case, and finds that Cincinnati's claim fails.

### c. Conclusion

It is undisputed that Cincinnati and Society insure separate parties: Cincinnati insures only Tanks and Society insures only Habanero. As explained above, this fact alone is enough to dispose of both of Cincinnati's claims against Society. For that reason, Society's Motion for Summary Judgment is granted.

## II. Society's Motion to Dismiss

Society has also moved to dismiss Habanero's crossclaims on abstention grounds. On December 22, 2014, Habanero filed an Answer with the Court, in which it also brought three crossclaims against Society. (*See* Doc. 27 at 16-30). It seeks from the Court declaratory judgments that (1) the underlying litigation that

Cincinnati has brought against it is within the scope of its policy with Society, (*id.* at 25); (2) Society has a duty to defend it against Cincinnati's claims, (*id.* at 27-28); and (3) the Policyholder Release that it executed with Society does not preclude coverage. (*Id.* at 28-30).

Six days earlier, Society had filed a similar declaratory judgment action in Cook County Circuit Court. (*See* Doc. 32-1). That complaint seeks a declaratory judgment that this litigation is not within the scope of Society's policy with Habanero and that Society has no duty to defend or indemnify Habanero, (*id.* at 7, 10), and a declaratory judgment that the Policyholder's Release precludes coverage. (*Id.* at 10).

Society urges the Court to abstain under the doctrine of *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942) and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).[3] *Wilton-Brillhart* abstention permits federal courts to abstain from proceeding in a declaratory judgment suit "where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties." *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 707 (7th Cir. 2014) (quoting *Brillhart*, 316 U.S. at 495). This doctrine is based upon permissive language included in the Declaratory Judgment Act, which states that a federal court "*may* declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201 (emphasis added).

---

[3] In the alternative, Society has asked the Court to abstain pursuant to *Colorado River Conservation District v. United States*, 424 U.S. 800 (1976). As explained below, the Court concludes that abstention under *Wilton-Brillhart* is appropriate, and therefore needs not discuss abstention pursuant to *Colorado River*.

10

Under *Wilton-Brillhart* abstention, "district courts possess significant discretion to dismiss or stay claims seeking declaratory relief, even though they have subject matter jurisdiction over such claims." *Envision Healthcare, Inc. v. PreferredOne Ins. Co.*, 604 F.3d 983, 986 (7th Cir. 2010). Courts considering whether to abstain consider whether the federal declaratory judgment action presents questions distinct from those presented by the state court action, whether the parties in the two actions are identical, whether the federal court declaratory judgment action can serve a useful purpose in clarifying the parties' legal relationships rather than amounting to duplicative and piecemeal litigation, and whether the plaintiff seeking the federal declaratory judgment can obtain comparable relief in another forum. *Medical Assur. Co., Inc. v. Hellman*, 610 F.3d 371, 379 (7th Cir. 2010) (quoting *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995). "There is no set criteria for when a court should exercise its discretion to abstain . . . but the classic example of when abstention is proper occurs where . . . solely declaratory relief is sought and parallel state proceedings are ongoing." *Envision Healthcare, Inc.*, 604 F.3d at 986.

In deciding whether to abstain, the first thing the Court considers is whether the two pending cases are parallel. "Two actions are parallel when substantially the same parties are contemporaneously litigating substantially the same issues in two fora." *Id.* Two cases need not have exactly the same parties in order to be parallel.

*Envision Healthcare* presents what is close to a mirror-image of this case. There, a man sued his insurance company in state court and alleged that it had improperly rescinded his policy. *Id.* at 984. Shortly thereafter, the insurance

11

company filed a third-party complaint in the state court action seeking a declaration that a wholesale insurance broker needed to indemnify it. *Id.* The broker then filed a declaratory judgment action in Illinois federal court, in which it sought a declaration that it had no obligation to indemnify the insurer. *Id.* The state court plaintiff was not a party to the federal declaratory judgment action. *Id.*

In that case, the Seventh Circuit upheld the district court's decision to abstain. It concluded that the state court case (which included an additional party, the state court plaintiff) and the federal case were parallel because "the third-party suit in Minnesota involves the same parties as the federal case," and "the same precise legal question will be answered in both suits: whether [the insurance broker] owes [the insurer] a duty to indemnify it for any loss incurred in the [state court lawsuit." *Id.* at 987.

Before this Court are three parties, but the crossclaim only includes two parties: both Defendants. The only two parties in the state court action are the Defendants in this case. Both Cincinnati and Habanero argue that these cases are not parallel because Cincinnati is not present in the state court action. (*See* Doc. 36 at 2-3; Doc. 37 at 6). Further, they argue that although the pending state case involves some of the same issues that are present in this case, the state case only involves a subset of the larger issues. (*See* Doc. 36 at 3-4; Doc. 37 at 7). Specifically, they argue that the state case only implicates Society's obligations under the general liability coverage of its policy with Habanero and does not implicate Society's obligations under the first-party property coverage part of the policy. (*See*

Doc. 36 at 3; Doc. 37 at 7). Habanero also points out that this Court must address Cincinnati's subrogation claim against Society. (Doc. 37 at 7).

Habanero and Cincinnati attempts cannot muddy water that has been clarified by the Court's decision granting Society summary judgment with respect to Cincinnati's claims. (*See supra* at 4-9). At this stage, the only claims remaining against Society are Habanero's crossclaims for declaratory judgment. No subrogation claim remains pending against Society, and no claim implicating the scope of the first-party property coverage under Society's policy with Habanero remains pending. (*See id.*). The only claims that remain pending against Society relate to its obligation to indemnify Habanero, it's obligation to defend Habanero, and the effectiveness of the release entered into by it and Habanero. (*See* Docs. 27, 32-1). Habanero's crossclaims and Society's state court complaint address all of these issues, and only these issues. (*See id.*). Therefore, this Court and the state court have been asked to decide identical factual and legal questions. *See Envision*, 604 F.3d at 986. Contrary to Cincinnati's suggestion, the federal action cannot at this point "clarify Society's legal obligations to a significantly greater degree than would the state action." (Doc. 36 at 3); *see also Medical Assur. Co.*, 610 F.3d at 379.

Further, the fact that there is one more party present in this case than there is in the state case cannot skew the parallel nature of the two cases. Cincinnati attempts to distinguish *Envision* by arguing that "the *Envision* court deferred . . . to the state action over the federal action because the parties in the federal action . . . were a mere subset of the parties in the state action." (*Id.* at 3). This distinction, however, is not compelling in light of the guidance offered by the *Envision* court, as

13

Cincinnati's interest may be practical but is not legal.[4] Cincinnati is not named in either the crossclaims or in the state court action; it is a stranger to both. Therefore, in this case, Habanero's crossclaim and Society's state court action not only present the exact same legal questions, but also involve the exact same parties. (*Compare* Doc. 27 at 27-30 *with* Doc. 32-1 at 7-10). Because "the same parties are contemporaneously litigating substantially the same issues in two fora," the cases are parallel. *Envision Healthcare, Inc.*, 604 F.3d at 986.

In light of this, the Court will exercise its prerogative to abstain. *See* 28 U.S.C. § 2201. Each of the factors identified in *Medical Assurance Co.* are present. *See* 610 F.3d at 379. Here, where the relevant parties are the same and the relevant legal questions are identical, the Court would not clarify the legal obligations and relationships among the parties with any greater ability than the state court would. *See id.* Rather, this Court's consideration of these issues would just be duplicative of the state court's consideration. *See id.* Further, Habanero can seek the same relief that it seeks in federal court in state court. *See* 735 ILCS 5/2-701 (providing for declaratory judgments in Illinois state court). Finally, no parties dispute that Illinois law governs the questions presented in both the state court action and Habanero's crossclaims. *See Medical Assur. Co.*, 610 F.3d at 381 (noting that the Declaratory Judgment Act "has no effect on the substantive law that governs a

---

[4] Without citation to legal authority, Cincinnati and Habanero both argue that Cincinnati has an interest in the state court action, where it is not present. Of course Cincinnati has some interest in the outcome of any declaratory judgment involving Society and Habanero. It would like Society to indemnify Habanero because it would like to collect against Society in the event that it succeeds against Habanero. However, the parties have failed to argue that Cincinnati has any legal interest in either Society's declaratory judgment claims against Habanero or in Habanero's declaratory judgment crossclaims against Society.

14

case). The fact that Illinois law governs Habanero's crossclaims also favors abstention. *Cf. Clark v. Lacy*, 376 F.3d 682, 688 (7th Cir. 2004) (noting, in context of *Colorado River* abstention, that "a state court's expertise in applying its own law" favors abstention). For these reasons, the Court dismisses Habanero's crossclaims.

## CONCLUSION

For the foregoing reasons, Society's Motion for Summary Judgment (Doc. 19) is GRANTED and Society's Motion to Dismiss (Doc. 31) is GRANTED. Defendant Society Insurance is TERMINATED from this case. This case is REFERRED to Magistrate Judge Hawley for further pretrial proceedings. IT IS SO ORDERED.

Entered this 4th day of March, 2015.

                                                  s/ Joe B. McDade
                                               JOE BILLY McDADE
                                  United States Senior District Judge